## Commonwealth *v.* Levandowski, Appellant.

478

Argued November 14, 1938.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker and Rhodes, JJ.

*Meyer Love,* for appellant.

*Norris Stanley Barratt, Jr.,* Assistant District Attorney, with him *Charles F. Kelley,* District Attorney, for appellee.

Opinion by Cunningham, J., January 31, 1939:

Walter Levandowski has appealed from his conviction

upon an indictment charging him, as the reputed father of a female child born to Mary Nowak on January 24, 1937, with having refused to contribute reasonably to its support. The only issue of fact at the trial was that of parentage. It was conceded by the Commonwealth that Mary Nowak was a married woman when the child was begotten and that her husband, Anthony Nowak, was at that time living in a section of the City of Philadelphia. Appellant neither testified nor called any witnesses.

The sole question of law involved upon this appeal is whether the evidence adduced by the Commonwealth, in its effort to rebut the presumption of access by the husband, was sufficient to warrant the trial judge in submitting the question of appellant's parenthood to the jury.

The trial judge properly refused to permit the mother to testify to non-access. Her testimony relative to the "criminal connection" (Com. v. DiMatteo, 124 Pa. Superior Ct. 277, 279, 188 A. 425), was to this effect: She was married to Anthony Nowak in 1926 and has two legitimate children, respectively nine and ten years of age; for a number of years she and these children have lived in the home of her mother at No. 4616 Bermuda Street, Philadelphia.

In November, 1935, she met appellant when he came to her mother's house as a roomer and boarder and, under his promise to pay the expense of procuring a divorce from her husband, entered into sexual relations with him which continued until May 10, 1936, when he left. During this period she and appellant occupied the same bedroom and had frequent sexual intercourse. When apprised of her pregnancy, appellant urged her to have an abortion performed.

Anna Kaminsky, a married sister of Mary Nowak, living at No. 4648 Bermuda Street, testified Anthony Nowak left her sister eight or nine years ago when they were living at 2370 Margaretta Street; that she visited

her mother and sister almost daily at No. 4616 Bermuda Street but never saw Anthony Nowak at that house; and that Anthony was living, at the date of trial, with another woman in the Richmond district of the city.

Chester Mika, a brother of Mary Nowak, seventeen years of age and living with her and his mother, testified he had known appellant since he came to board with them and that appellant and his sister occupied the same bedroom from early in 1936 until appellant left, but he never saw Anthony Nowak there. With relation to going to see appellant at the factory where he was employed this witness testified: "Q. Can you tell us when you first went to the mill to call upon him—the factory rather? A. I don't remember the date. Q. Was it before or after the birth of the baby? A. After. Q. How soon after? A. It wasn't much longer. Q. A month or two months? A. Yes—I just couldn't remember. ...... Q. Give the exact words he told you, all he said to you? A. He told me in Polish. Q. Translate it. He said what in Polish? In Polish he said something. You tell us in English what he said to you. A. He told me to come around next week. Q. Next week? What for? A. For money. Q. What was the money for, did he say? A. For my sister. ...... Q. What was the conversation about money? A. About the baby. ...... Q. Did you ever receive money from him? A. No."

Every case in which this general subject is involved must necessarily be decided upon its own facts. The guiding principles of law have recently been considered by this court in *Dulsky v. Susq. Collieries Co.*, 116 Pa. Superior Ct. 520, 177 A. 60; *Com. v. DiMatteo*, supra; *Com. v. Gantz*, 128 Pa. Superior Ct. 97, 193 A. 72; and *Com. v. Atherton*, 129 Pa. Superior Ct. 64, 194 A. 779, and need not be repeated.

It is true, as argued by counsel for appellant, that the evidence of the Commonwealth did not absolutely exclude the *possibility* of access by Mary Nowak's husband during the period the child was begotten. But

his proposition that the Commonwealth was not entitled to have this case submitted to the jury if there was a possibility of access, no matter how remote, is no longer the law. In the colorful language of Mr. Justice CARDOZO (*In re Findlay*, 253 N. Y. 1, 170 N. E. 471), the "rule of the four seas" was "exploded" two centuries ago. The modern rule, as there stated by him, is that "countervailing evidence may shatter the presumption [of legitimacy] though the possibility of access is not susceptible of exclusion to the point of utter demonstration." Legitimacy is not to be sustained "by a sacrifice of probabilities in a futile quest for certainty."

As to our cases comparable with the one at bar, we think it should be governed by those of *Dulsky v. Susquehanna Collieries Co.*, and *Com. v. Gantz*, supra, rather than *Com. v. DiMatteo* and *Com. v. Atherton*, supra. Here, the *possibilities* are with appellant but the *probabilities* are all against him. When the evidence closed the trial judge was not bound to "sacrifice" the latter "in a futile quest for certainty."

Judgment affirmed.